IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Kristi P.,<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner of Social Security Administration,<br><br>Defendant. | Case No. 1:25-cv-03995-JD<br><br>**ORDER** |

This matter is before the Court for review of the Report and Recommendation (the "Report") of United States Magistrate Judge Shiva V. Hodges, issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a) (D.S.C.). (DE 22.) The Report recommends affirming the Commissioner of Social Security Administration's final decision denying Plaintiff Kristi P.'s[1] ("Plaintiff") claim for Disability Insurance Benefits ("DIB"). Plaintiff timely filed specific objections to the Report (DE 25), and the Commissioner filed a reply (DE 26).

For the reasons below, the Court sustains in part Plaintiff's objection concerning the evaluation of treating orthopedist Mark A. Pierce, M.D.'s opinion as to Plaintiff's ability to sit, declines to adopt the Report to the extent it recommends affirmance, reverses the Commissioner's final decision under sentence four of 42 U.S.C. § 405(g), and remands the matter for further administrative proceedings.

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in Social Security cases, federal courts refer to claimants only by their first names and last initials.

## A. Background

Plaintiff protectively filed her DIB application on July 5, 2013, alleging disability beginning January 13, 2013. (Tr. 101, 157–58.) Plaintiff's date last insured was December 31, 2014; accordingly, she was required to establish disability on or before that date. (Tr. 724.) This claim has a lengthy procedural history, including prior remands by this Court and the Appeals Council. Most recently, the Appeals Council remanded the matter in August 2023, directing the Administrative Law Judge ("ALJ"), among other things, to give further consideration to the medical-source opinions under 20 C.F.R. § 404.1527. (Tr. 896.) Also, the ALJ was to explain the weight assigned to those opinions, and reconsider Plaintiff's residual functional capacity ("RFC") with appropriate rationale and specific references to the evidence of record. (Tr. 896–99.)

Following a December 12, 2023, hearing, ALJ James Cumbie issued the decision now under review on May 1, 2024. (Tr. 721–49, 750–70.) The ALJ determined that, through the date last insured, Plaintiff had severe impairments including left-knee degenerative joint disease, chondromalacia and plica syndrome status post arthroscopy, lumbar degenerative disc and joint disease, obesity, anxiety, and depression. (Tr. 726.) He assessed an RFC for reduced sedentary work that included postural, environmental, and mental restrictions, but no at-will sit/stand option or other restriction on the duration of sitting. (Tr. 729–30.) Based on vocational expert testimony, the ALJ found that Plaintiff could perform representative sedentary

occupations, including order clerk and charge account clerk, and therefore was not disabled from January 13, 2013, through December 31, 2014. (Tr. 739–40.)

The Appeals Council declined to assume jurisdiction, rendering the ALJ's decision the Commissioner's final decision for purposes of judicial review. (Tr. 708–11.)

Plaintiff sought review in this Court and challenged, among other things, the ALJ's evaluation of the opinions of treating orthopedist Dr. Pierce and examining physician David Rogers, M.D. The Report recommends rejecting those challenges and affirming the Commissioner's decision. (DE 22 at 38–51.) Plaintiff objects. As relevant here, she contends that neither the ALJ nor the Report adequately reconciled Dr. Pierce's opinion that her knee impairment limited her ability to remain seated for more than approximately fifteen to twenty minutes at a time. (DE 25 at 5–7.)

**B. Legal Standard**

A magistrate judge's recommendation has no presumptive weight, and responsibility for making a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must make a de novo determination of those portions of the Report to which a party makes a specific objection and may accept, reject, or modify the recommendation, in whole or in part. 28 U.S.C. § 636(b)(1).

An objection is sufficiently specific when it "reasonably . . . alert[s] the district court of the true ground for the objection." *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)).

Repetition of an argument previously presented to the magistrate judge does not, standing alone, eliminate the district court's obligation to conduct de novo review when the objection specifically identifies the challenged recommendation and the asserted error. *See id.* at 460–61.

Judicial review of the Commissioner's final decision is limited to determining whether the correct legal standards were applied and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Dowling v. Commissioner of Social Security Administration*, 986 F.3d 377, 382–83 (4th Cir. 2021). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). The Court does not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83, 95 (4th Cir. 2020).

That deferential standard does not eliminate the agency's obligation to explain its reasoning. The Fourth Circuit recently reiterated that reviewing courts ask not merely "whether the ALJ examined all relevant evidence," but also whether the ALJ "offered a sufficient rationale in crediting certain evidence and discrediting other evidence." *Drumgold v. Commissioner of Social Security*, 144 F.4th 596, 605 (4th Cir. 2025) (quoting *Shelley C. v. Commissioner of Social Security Administration*, 61 F.4th 341, 353 (4th Cir. 2023)). Missing analysis may "make[] it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Accordingly, the

decision must provide a reviewable path from the evidence to the conclusion. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

Because Plaintiff filed her claim before March 27, 2017, the former treating-source regulation applies. *See* 20 C.F.R. § 404.1527. Under that framework, a treating source's medical opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Dowling*, 986 F.3d at 384. If controlling weight is not assigned, the ALJ must consider the regulatory factors in determining the weight to give the opinion. *Id.* at 385. Although the ALJ need not provide a "detailed factor-by-factor analysis," it must be apparent from the decision that the ALJ "meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Id.*

The RFC analysis likewise must permit meaningful review. "[E]very conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Id.* at 387 (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)); *see* SSR 96-8p, 1996 WL 374184, at *7.

**C. Discussion**

Plaintiff's objection identifies a narrow but material deficiency in the ALJ's evaluation of Dr. Pierce's opinion concerning her ability to sit. Plaintiff objects to the Report's acceptance of the ALJ's statement that "[t]here are no objective medical

findings in the record . . . indicating the claimant had limited ability to sit prior to the date last insured." (DE 25 at 6 (quoting Tr. 739).) She argues that Dr. Pierce identified the underlying patellofemoral arthritis, explained why bending the knee would produce pain while seated, and assessed a need to change positions after approximately fifteen to twenty minutes. (*Id.* at 738) The Commissioner responds that the Report correctly concluded that the ALJ identified evidence appearing to contradict Dr. Pierce's opinion and reasonably relied on the post-Pierce examinations and asserted lack of corroborating evidence. (DE 26 at 2.) The Court agrees with Plaintiff only to the limited extent explained below.

**1. Dr. Pierce's contemporaneous assessment**

The Court first recognizes that the May 2024 decision addresses Dr. Pierce's treatment relationship considerably more fully than the administrative decisions that preceded the prior remands. The ALJ identified Dr. Pierce as Plaintiff's treating orthopedic specialist, acknowledged that he performed Plaintiff's April 2013 arthroscopic surgery, discussed his longitudinal examinations, and identified both positive and relatively normal findings from those examinations. (Tr. 731–32, 737–39.) The Court, therefore, does not conclude that the ALJ wholesale failed to consider the treating relationship or failed to comply with the prior remand directives.

The remaining problem is more specific. On August 13, 2013—during the insured period—Plaintiff returned to Dr. Pierce for follow-up of her left knee. In the history portion of the treatment note, Dr. Pierce recorded Plaintiff's report that her knee had slightly improved but that she "still could not stand and do any significant

work for more than 15 to 20 minutes and also cannot sit for more than 15 to 20 minutes continuous." (Tr. 275.) On examination, Dr. Pierce observed trace knee effusion and range of motion limited to zero to ninety-five degrees. He assessed left knee "DJD," degenerative joint disease. (*Id.*)

Importantly, the fifteen-to-twenty-minute restriction did not remain solely in the history section as Plaintiff's subjective report. In his own treatment plan, Dr. Pierce stated: "It is still difficult for her to return to any work as she has problems with both standing as well as sitting for anything more than 15 or 20 minutes." (Tr. 275.) He also noted that prior steroid and viscosupplementation injections had not provided sustained relief. He also noted that Plaintiff continued Mobic and Ultram and used a patellofemoral stabilization brace as needed. He explained that Plaintiff was not then an ideal candidate for knee arthroplasty because of her young age. (*Id.*)

The ALJ did not overlook the August 2013 visit. In his medical summary, he stated that Plaintiff "claimed inability to sit or stand for more than 15 to 20 minutes at a time" and noted that her knee range of motion was reduced to 95 degrees. (Tr. 732.) But when later assigning weight to Dr. Pierce's August 2013 opinion, the ALJ addressed only Dr. Pierce's statement that Plaintiff might be "very limited in her options as [to] gainful employment," which the ALJ discounted as speculative, lacking a function-by-function analysis, and concerning an issue reserved to the Commissioner. (Tr. 737–38.) That reasoning was permissible as to the ultimate question whether Plaintiff could work. *See* 20 C.F.R. § 404.1527(d). It did not,

however, address the distinct functional judgment in the same treatment note that Plaintiff had problems sitting and standing for more than fifteen to twenty minutes.

The applicable regulation defines a "medical opinion" to include an acceptable medical source's judgment about "what you can still do despite impairment(s)" and "your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Dr. Pierce's statement in the treatment plan that Plaintiff had problems sitting beyond fifteen to twenty minutes falls within that functional category. *See Shelley C. v. Commissioner of Social Security Administration*, 61 F.4th 341, 356 (4th Cir. 2023) (explaining that a treating physician's statement touching an issue reserved to the Commissioner did not permit the ALJ to discount the remainder of the physician's opinion). The decision does not separately weigh that contemporaneous sitting assessment.

This distinction bears directly on Plaintiff's objection. Plaintiff argues that merely summarizing the medical evidence does not itself show that the ALJ reconciled evidence supporting Dr. Pierce's opinion with evidence the ALJ viewed as inconsistent with it. (DE 25 at 2–4.) The Court does not accept Plaintiff's broader contention that the ALJ failed to reconcile Dr. Pierce's opinions generally. But as to sitting, the August 2013 note shows why the distinction between recounting evidence and evaluating a medical opinion matters: the ALJ recounted Plaintiff's reported fifteen-to-twenty-minute limitation earlier in the decision, but did not address Dr. Pierce's adoption of substantially the same restriction in his treatment plan when assigning weight to the August 2013 opinion.

**2. The 2016 letter and the ALJ's rationale as to sitting**

In the 2016 letter, Dr. Pierce expressly explained the medical basis for the sitting limitation. He stated that Plaintiff had "significant arthritis in the patellofemoral compartment" and explained: "This is going to cause significant pain when the knee is bent, including when she is seated . . . ." (Tr. 326.) He continued:

> So, Ms[.] Prince was in the unfortunate situation in which she could not stand or walk long, nor could she sit long, without increasing levels of pain that are going to require her to shift positions. She would be able to sit for about 15 to 20 minutes, after which time she would have to stand for about the same period.

(*Id.*) Dr. Pierce also explained that knee replacement would resolve the problem, but that he did not want to perform it until Plaintiff was fifty because replacement knees "have a limited life span" and delaying replacement could reduce the need for future revisions. (*Id.*)

The ALJ gave the 2016 opinion little weight. He permissibly considered that it was rendered almost two years after the date last insured and more than two-and-a-half years after Dr. Pierce's last documented examination. (Tr. 738.) He also cited subsequent examinations reflecting normal gait, normal lower-extremity range of motion, no joint instability, and normal motor tone, bulk, and strength. (*Id.*) Those are legitimate considerations, and the Court does not reweigh them.

After discussing those considerations, the ALJ concluded: "There are no objective medical findings in the record, however, indicating the claimant had limited ability to sit prior to the date last insured." (Tr. 739.) That conclusion creates a reviewability problem because the same record includes Dr. Pierce's August 2013 treatment note, rendered during the insured period, in which he documented trace

effusion, flexion limited to 95 degrees, and a specific functional assessment that Plaintiff had difficulty sitting longer than fifteen to twenty minutes. (Tr. 275.)

The 2016 letter did not introduce that sitting restriction for the first time. Rather, it supplied a medical explanation for the same limitation Dr. Pierce had recorded while treating Plaintiff in 2013: bending the knee in the setting of patellofemoral arthritis would cause increasing pain while seated. (Tr. 326.)

The Court does not hold that the August 2013 findings establish the restriction, that Dr. Pierce's opinion must receive controlling weight, or that the 2014 records showing normal gait, strength, and range of motion could not support rejection of the restriction. Those are matters for the Commissioner to resolve in weighing the conflicting medical evidence.

The difficulty is explanatory. The ALJ identified later normal examinations as inconsistent with the 2016 letter, but did not explain how those findings were weighed against Dr. Pierce's contemporaneous August 2013 sitting assessment and his later medical explanation for that same restriction. (Tr. 738–39.) Because the significance of those medical findings as to sustained sitting is a matter the agency must evaluate in the first instance, the Court cannot supply the missing reconciliation.

That gap matters under the Fourth Circuit's substantial evidence framework. Although the ALJ resolves conflicts in the medical evidence, a reviewing court must still determine whether the ALJ "offered a sufficient rationale in crediting certain evidence and discrediting other evidence." *Drumgold*, 144 F.4th at 605 (quoting

*Shelley C.*, 61 F.4th at 353). And the Court may not affirm on a rationale the agency did not give. *See Radford*, 734 F.3d at 294–95. The decision must provide enough explanation to permit the Court to trace the path from the evidence to the conclusion. *See Monroe*, 826 F.3d at 189.

*Dowling* is particularly instructive. There, the Fourth Circuit addressed a sedentary RFC where the claimant disputed her ability to remain seated for prolonged periods. 986 F.3d at 388–89. The court explained that the conclusion as to sitting "should have been the result of an analysis that was separate from the ALJ's appraisal of Appellant's ability to perform other functions" and "should have been accompanied by 'a narrative discussion describing' the evidence supporting it." *Id.* at 388 (quoting *Thomas*, 916 F.3d at 311). The court also emphasized that sitting was "contested" and "critically relevant" because an additional sitting restriction could preclude sedentary work. *Id.* at 389. Although *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), rejected a per se rule requiring remand whenever an ALJ omits an explicit function-by-function analysis, that rule does not eliminate the need for a reviewable explanation where a particular function is both disputed and material. *See Dowling*, 986 F.3d at 389.

This case presents a narrower analytical gap than *Dowling* because the ALJ here expressly mentioned sitting and expressly rejected a sitting limitation. But the rationale given, an asserted absence of objective findings indicating limited sitting, does not grapple with the contemporaneous treating-source functional assessment at Tr. 275 or with Dr. Pierce's later explanation of the medical basis for that same

restriction. Where sitting is both contested and vocationally material, the decision must explain how the relevant evidence supports the conclusion reached. *See Dowling*, 986 F.3d at 388–89.

The Report does not cure that deficiency. The Report accurately recounted that, on August 13, 2013, Dr. Pierce indicated it would be difficult for Plaintiff "to return to any work as she has problems with both standing as well as sitting for anything more than 15 or 20 minutes." (DE 22 at 39; Tr. 275.) Yet the Report later concluded that substantial evidence supports the ALJ's allocation of little weight based on the post-Pierce evidence and "the lack of evidence to corroborate Dr. Pierce's impression that Plaintiff's ability to sit would be limited." (DE 22 at 45.) That latter characterization is difficult to square with the contemporaneous treating-source assessment the Report itself recounted, and the Report cannot supply the medical-evidence reconciliation missing from the ALJ's stated rationale. *See Radford*, 734 F.3d at 294–95.

The Court cannot determine in the first instance whether the findings at Tr. 275 and the explanation at Tr. 326 are sufficient to establish the restriction or whether other substantial evidence outweighs them. That reconciliation is committed to the agency. The Court holds only that the explanation provided does not adequately show why the ALJ rejected this specific, longitudinally repeated, and vocationally material sitting limitation.

The Commissioner responds that the Report correctly found that the ALJ "pointed to evidence that appeared to contradict Dr. Pierce's opinion" and also

emphasizes that the ALJ credited portions of Dr. Pierce's opinions in restricting Plaintiff to less than the full range of sedentary work. (DE 26 at 2.) Those points have force. The ALJ did not reject Dr. Pierce wholesale, and the post-Pierce examinations were part of the evidentiary record the ALJ was entitled to consider. The Court, therefore, does not accept Plaintiff's contention to the extent she suggests that those later findings could play no role in evaluating Dr. Pierce's restrictions. The narrower problem is that neither the partial credit given to Dr. Pierce's standing restriction nor the existence of later normal findings explains how the ALJ evaluated the distinct, contemporaneous restriction on sustained sitting. The relevant question is not whether the Court can identify evidence from which the ALJ could have rejected that restriction, but whether the ALJ adequately explained why the evidence he actually relied upon supported doing so. *See Drumgold*, 144 F.4th at 604.

Nor does the state agency evidence discussed elsewhere in the ALJ's decision supply the missing explanation. The ALJ expressly gave "greater weight" to Dr. Walker's finding that Plaintiff could stand and walk for no more than two hours in an eight-hour day. (Tr. 736.) But the decision did not rely on Dr. Walker's assessment of sitting tolerance to reject Dr. Pierce's fifteen-to-twenty-minute sitting restriction or otherwise reconcile the competing assessments on that function. The Court may not supply that rationale on judicial review. *See Radford*, 734 F.3d at 294.

**3. The deficiency is material**

The unresolved sitting limitation could affect the step-five determination. The operative vocational hypothetical mirrored the assessed sedentary RFC and

contained no at-will sit/stand restriction. (Tr. 766–67.) In response, the vocational expert identified sedentary jobs including order clerk and charge account clerk. (Tr. 767.) Plaintiff's counsel then asked whether the listed jobs would permit an individual to switch between sitting and standing at will. (Tr. 768–69.) The vocational expert answered: "Nothing in the cited jobs of the first hypothetical." (Tr. 769.) She also testified that an individual "would need to remain in a seated position for up to an hour before briefly shifting positions and returning to a seated position" and that the jobs "would not allow for changing positions at will." (*Id.*)

Thus, the Court cannot conclude that the explanatory deficiency is *harmless*. If, after properly evaluating the evidence, the Commissioner were to find that Plaintiff required position changes at around fifteen-to-twenty-minute intervals, the vocational testimony indicates that the jobs supporting the existing step-five determination would be affected.

Again, the Court does not hold that the evidence requires such a limitation. Nor does it determine that Dr. Pierce's opinion must be accorded controlling weight or that Plaintiff was disabled during the insured period. The Court holds only that the present decision does not adequately explain the rejection of the sitting limitation in light of Dr. Pierce's contemporaneous August 2013 assessment, his later medical explanation of that assessment, and the vocational significance of the disputed function.

Because this issue independently requires remand, the Court need not decide whether Plaintiff's remaining objections concerning Dr. Rogers, the ALJ's treatment

of daily activities, or other aspects of the medical opinion analysis independently warrant reversal. On remand, the Commissioner should:

(1) reevaluate Dr. Pierce's opinion as to sitting, including the August 13, 2013, treatment note and August 1, 2016, explanatory letter;

(2) explain the weight assigned to that functional limitation under the applicable regulatory framework;

(3) reassess the physical RFC as necessary; and

(4) obtain additional vocational evidence if warranted.

The Court expresses no opinion on the ultimate disability determination.

**D. Conclusion**

For these reasons, the Court **SUSTAINS IN PART** Plaintiff's objections (DE 25) as to the evaluation of Dr. Pierce's opinion concerning Plaintiff's ability to sit, **DECLINES TO REACH** the remaining objections because the identified error independently requires remand, and **DECLINES TO ADOPT** the Report and Recommendation (DE 22) to the extent it recommends affirmance.

Under sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

The Clerk of Court is directed to enter a separate judgment pursuant to Federal Rule of Civil Procedure 58 and close this case.

IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 21, 2026